Let it be referred to a master to take an account.

---

### ABRAHAM A. QUACKENBUSH v. ABRAHAM VAN RIPER and others.

When an injunction has been duly served on the defendants, they are personally responsible for a violation of the order of the court, in whatever capacity, or with whatever view they acted.

When new works are to be erected on an old possession, (the right of the complainant having been established,) equity will restrain.

The writ of injunction is not used to restrain any possible interference, however small, with the complainant's rights.

If the proprietor of land, by building a mill and raising a head of water on his own land, is about to cause serious and irreparable damage to his neighbor's property, equity will restrain him: but if the injury is comparatively small, and may be compensated in damages, an injunction ought not to issue.

An injunction will not issue for the prevention of every trespass or infringement of right, where a suit at law might be brought.

A party having established his right at law, stands, in regard to trespasses, and injuries of that character, in no better situation than one whose right is not disputed. Neither is entitled to protection by injunction unless the injury is serious, permanent and destructive of the estate.

THIS cause was heard upon a rule to show cause why an attachment should not issue against the defendants, for a con-

tempt in disobeying an injunction; and also upon motion on the part of the defendants to dissolve the injunction. The grounds of each application are fully stated in the opinion of the chancellor.

*Dickerson*, for complainant.

*E. B. D. Ogden* and *Vanarsdale*, for defendants.

Cases cited by defendants' counsel in support of the motion to dissolve the injunction. 1 *Cox*, 102; 2 *Vesey, sen.* 414; 2 *Atkyns*, 483; 6 *John. Chan. R.* 46; 4 *Hen. and Mun.* 474; 1 *Marsh*, 554; 1 *John. Chan. R.* 318; 7 *John. Chan. R.* 315, 330; 3 *Mer.* 148; *Eden on Inj.* 322; 6 *John. Chan. R.* 20; 3 *John. Chan. R.* 287; 3 *Atkyns*, 21; 4 *John. Chan. R.* 21; *Jer. Eq.* 311.

THE CHANCELLOR. On the twenty-first day of August, eighteen hundred and thirty-four, an injunction issued out of this court, directed to the defendants, commanding them to desist from building a dam across a certain stream called the Goffle brook, in the township of Franklin and county of Bergen, on the lands of the said Abraham Van Riper, so as by means thereof to flow back the waters of said stream on the land of the said Abraham A. Quackenbush, above his line, as designated by the bottom of the foundation of a dam called the turning-mill dam, formerly erected on said line by one Jesse Chapple, the site of which foundation yet remains. The writ was served on the twenty-fifth of the same month, on each of the defendants personally.

The complainant, alleging that the injunction had been disobeyed, applied for an attachment, and exhibited some affidavits in proof of the allegation; whereupon a rule was granted calling upon the defendants to show cause why an attachment should not issue against them. Testimony has been taken on both

sides, and the question now is whether the rule shall be made absolute, or whether it shall be discharged.

A number of witnesses have been examined, and the evidence is somewhat contradictory; but I think the evidence of Samuel Quackenbush, Jacob A. Terhune, David Myers, and Joseph Baldwin, is conclusive to show, that the water is flowed back beyond the sill or foundation of the turning-mill dam. Three of them swear positively that it is still-water for twenty-five paces above the sill. Myers and Baldwin are millwrights, and both state that the flowing back is owing to the dam of Van Riper below. This is not satisfactorily met or disproved by the answer or the witnesses of the defendants.

It is evident, therefore, that the command of the injunction has been violated and disobeyed by the defendant Van Riper. As to Munn and Whitehead, the other defendants, it is sufficiently proved that they were instrumental in raising the dam to its present height. They put on the last plank and pinned it. It is no justification to say, they did this to prevent injury to the dam, it being in part unfinished; or that the dam was not placed there at their expense or through their agency. They were parties to the bill. The injunction had been served on them; and in whatever capacity or with whatever view they acted, if the order of the court was violated, they are personally responsible.

The rule must be made absolute as to all the defendants.

It is now moved to dissolve the injunction on two grounds :— 1st. That it was improvidently issued—there being no equity in the bill. 2d. That the equity, if any, has been fully answered.

On looking again into the bill, I am satisfied that the injunction was properly ordered. The defendant, Van Riper, was building or erecting a dam across the brook, in lieu of the old one, which had been carried away by a freshet. The old one had flowed the water back above the complainant's line and on his soil and freehold. An action had been brought in the supreme court, and a recovery had of one hundred and forty-five dollars, for the damages sustained. The source of the injury not

[Quackenbush v. Van Riper et al.]

being removed, another action was brought, and pending that suit the dam was swept away by a flood. I considered that the right of the complainant to the property on which the injury was committed, had been established by a verdict and judgment at law, and that the injury sustained was of a permanent and irreparable character. Such was the fair inference from the bill; and my conclusion was that equity might properly protect the complainant in the enjoyment of his right, against any threatened injury of a similar kind. Hence the order was, that the water should not be raised beyond the sill, which it was supposed had been established as the line between the parties.

The necessary erection of a new dam, on or near the old site, presented a favorable opportunity for the complainant to claim the protection of the court. If the old dam had remained, this court could have afforded him no aid: he must have been left to his remedy at law. But when new works are to be erected on a former possession, (the right having been established,) equity may restrain: *Weller* v. *Smeaton*, 1 *Cox's Ch. R.* 102.

The former dam of the defendant had been erected only six years. No grant to flow back the water could be presumed; the length of time was not sufficient, and the verdict of the jury was directly opposed to such presumption. Such being the case, it was within the legitimate power of the court to interpose so as to prevent future permanent mischief and injury to the complainant's possession.

It was supposed, from the scope of the bill, that if the defendant raised his dam, so as to flow back the water beyond a certain point, the injury formerly experienced must necessarily be renewed, and become permanent and destructive of complainant's property.

Upon these grounds the injunction was granted.

The answer of the defendants admits the suit and recovery. It was prepared and filed after the dam was completed, and denies that there is any overflow on the complainant's lands; the defendant, Van Riper, claiming title to the land seventy feet above the turning-mill dam. The answer also alleges that if the

45

[Quackenbush v. Van Riper et al.]

land is the complainant's, and any of it is overflowed, it is of little or no value, being covered with rocks or stones at the bottom, and high rocks on the sides, and about ten yards wide in the broadest place; that the land is not used for any particular purpose, and the complainant's mill above is not injured in any way by the flowing back of the water.

How, then, stands the case on the motion to dissolve the injunction?

The answer expressly denies that there is any such flowing back by the dam as now erected, as to occasion any serious injury to the complainant's land. That strikes at the equity of the case. The injunction was not intended to prevent any other injury, than such as might be occasioned by the flowing back of the water. None other is charged or suggested in the bill. It was not intended to injoin the defendants against any possible interference, however small, with the complainant's rights. The writ is never used for such purpose.

If the case had been presented originally in the shape in which it now appears, the injunction would not have been granted; and I think it ought not to be continued.

Every proprietor of land has undoubtedly a right to build a mill and raise a head of water on his own land. If in so doing he is about to cause serious and irreparable damage to his neighbour's property, equity will restrain him; but if the injury is comparatively small and may be compensated in damages, an injunction ought not to issue. The party injured should be left to his legal remedy. In using small streams for milling purposes, it is almost impossible to prevent partial injury to some proprietor either above or below on the stream. If the injunction is to be used in every case of interference, very few of these streams could be appropriated to any useful purpose.

There is no charge in the bill, that the complainant is about to erect any other mills, or in any other way to appropriate or use the residue of the fall of the water on his premises, and that he is prevented from doing so by this dam. It is not pretended that there is any other mill-site there. One of the witnesses who

[Quackenbush v. Van Riper et al.]

was examined, says the flowing back of the water will greatly injure the mill-site of the complainant; but in the bill there is no such charge, nor is the aid of the court sought on that ground. There is no pretence that this flowing back of the water affects in any way the complainant's mill above. Against such a result, if properly charged and made out, the court would promptly and carefully guard.

If, then, the injunction is continued, it must be simply on the ground that the water is flowed back a short distance, say seventy-five feet, beyond the line, without doing any material injury to the complainant. And on the same ground, equity must interfere in all cases where the least possible invasion of private property is about to occur by the erection of a dam. It would have to adopt the principle, that an injunction will issue for the prevention of every trespass or infringement of right, when a suit at law might be brought. But that is not the principle of this court. There are many cases in which trespass may be maintained, that will not justify an injunction. In *Jerome v. Ross*, 7 *John. Chan. R.* 331, the established doctrine of the court was fully recognized, that equity will not interpose by injunction to restrain a trespass, where the injury does not appear to be irremediable and destructive to the estate, and where the ordinary legal remedy in the courts of law can afford adequate satisfaction. The trespass there was for entering upon the plaintiff's land, and digging, throwing up and carrying away large parcels of stone from a ledge of stone and mass of rock on the premises. An action had been brought, and a recovery had, at law; but the court refused an injunction.

It is insisted, however, that there has been a trial and recovery for the injury, and therefore the complainant should be protected.

There may be some doubt, from the answer, whether the title was in issue in the suit referred to. But suppose it to have been made a question, and settled by the verdict, in connection with the question of damages, the amount of the verdict justifies the conclusion that the injury as then presented and shown was not

[Quackenbush v. Van Riper et al.]

small and immaterial, but serious; and that the overflowing occasioned by the old dam was much greater than that caused by the present one. There is nothing in the whole case to show that the present dam flows the water back as far as the old one; and without this, the court cannot infer that the same damages would now be given by a jury, or that any thing more than nominal damages would be awarded. The dam is different, and the site is different; and though the water appears to flow to the mill through the same head race as formerly, there is nothing to show that the quantity flowing through it is the same. The mill is now lower down the stream, and less water may answer.

A party having established his right at law, stands, in regard to trespasses and injuries of that character, in no better situation than one whose right is not disputed. Both are regulated by the same rule; and neither is entitled to the protection of this court by injunction unless the injury is serious, and permanent, and destructive of the estate. I was induced from the bill to suppose that such injury would result from the dam in question, and this raised an equity in favour of the complainant. The answer of the defendant denies this equity; the facts do not support it, and the injunction must be dissolved.

I incline to believe that the breach of the injunction was not intentional on the part of the defendants. It is proved that Van Riper gave special directions to his workmen, after the injunction was served, not to flow the water back beyond the turning-mill dam. The facts disclosed in relation to the interference of Munn and Whitehead, are strong to show that their object was not to contemn the order of the court. Under these circumstances, and seeing that the injunction is to be dissolved, no further order will be made as to the defendants, than that they pay the costs of the application, and also pay their own costs on the motion to dissolve the injunction. Vide *Partington and al. v. Booth and al.,* 3 *Mer.* 148.

Order accordingly.